Filed 7/15/13  P. v. Scott CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW REY SCOTT,<br><br>    Defendant and Appellant. | 2d Crim. No. B244735<br>(Super. Ct. No. 2012020660)<br>(Ventura County) |

Matthew Rey Scott appeals a judgment following his conviction of possession of a controlled substance - methamphetamine (Health & Saf. Code, § 11377), with a finding that he had a prior strike - a 2008 first degree burglary conviction.  In response to a police officer's question during a parole search, Scott admitted that the substance in a bag in his pocket was methamphetamine.  Scott moved to exclude that statement because he was not given a *Miranda* warning.  (*Miranda v. Arizona* (1966) 384 U.S. 436.)  The trial court denied his motion.  We conclude the court erred.  But the error is harmless given the overwhelming evidence supporting the judgment.  We also conclude that an earlier statement Scott made before any police questioning was voluntary and admissible.  We affirm.

FACTS

On June 5, 2012, police officer Timothy Wedemeyer conducted a parole search at Scott's residence. He asked Scott to "step outside" so he could conduct a search of "his person." Scott complied.

In searching Scott's right pants pocket, Wedemeyer "felt a baggie consistent with narcotics." As Wedemeyer started to pull it "out of the pocket," Scott said, "Man this is fucked up. Why are you guys here? Now I'm really fucked."

Wedemeyer asked Scott, "[W]hat's in the bag?" Scott responded, "You know what it is. It's meth. Now I'm really fucked."

In a pretrial motion, Scott moved to exclude all the statements he made during the parole search. The trial court denied the motion.

DISCUSSION

*Admissibility of Scott's Initial Statements to the Police*

Scott contends the trial court erred by admitting the first statements he made during the parole search - "*Man this is fucked up. Why are you guys here? Now I'm really fucked.*" (Italics added.) He claims they are inadmissible under *Miranda v. Arizona*, *supra*, 384 U.S. 436 because he did not receive a *Miranda* warning prior to making them.

The People contend these remarks to Officer Wedemeyer were admissible because they were voluntary and he made them before any police questioning. We agree.

In reviewing claims that the trial court should have excluded or suppressed statements "based upon a *Miranda* violation, '"we accept the trial court's resolution of disputed facts and inferences . . . if supported by substantial evidence."'" (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 35.) "'"We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained."'" (*Ibid*.)

2

"Defendants who are in custody must be given *Miranda* warnings before police officers may interrogate them." (*People v. Huggins* (2006) 38 Cal.4th 175, 198.) Where a custodial interrogation occurs without a *Miranda* warning, the incriminating statements by the defendant in response to police questioning may be suppressed or excluded by the trial court. (*People v. Bejasa*, *supra*, 205 Cal.App.4th at p. 40.)

But as the Supreme Court stated in *Miranda*, "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (*Miranda v. Arizona*, *supra*, 384 U.S. at p. 478.)

Scott made these remarks before he was questioned by the police. The trial court found they were "spontaneous." It rejected Scott's claim that he made them involuntarily. It said, "I do not find it to be involuntary under all of the factors I'm required to consider. And I don't find it to be a violation of *Miranda*." These findings are supported by the record. "'[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect *in custody is subjected to interrogation*.'" (*People v. Buskirk* (2009) 175 Cal.App.4th 1436, 1449.) Here there was no interrogation before he made these remarks. There was no error.

*Admissibility of Scott's Answer to the Police Officer's Question*

Scott contends the officer's question, "*[W]hat's in the bag?*" constituted an interrogation while he was in custody. Scott answered, "*You know what it is. It's meth. Now I'm really fucked*." (Italics added.) He claims his answer should have been excluded.

The People contend his remarks were admissible because Scott was not in custody. We disagree.

Scott's statements were made in response to a police officer's question before he received *Miranda* warnings. He made them during a parole search. "It is settled in this state that custodial interrogation appears not only when a person is in

3

fact deprived of his freedom in any significant way, but also when as a reasonable person he is led to believe that his freedom of movement has been restricted by the pressures of official authority." (*People v. Farris* (1981) 120 Cal.App.3d 51, 56.)

Here the trial court made findings that Scott was detained and his freedom of movement was restricted. The court said, "[T]here's been an investigative detention here. There's no doubt about that. *He's detained. He's not free to go. No reasonable person in his position is going to think he's free to go*." (Italics added.) Those findings about Scott being in a custodial environment during the parole search are supported by the record.

Scott was not free to walk away from a parole search. As stated in *People v. Farris*, *supra*, 120 Cal.App.3d at page 56, a defendant subject to parole conditions was "not free to leave while his bedroom was being searched." Consequently, he "was obviously deprived of his freedom in a significant way." (*Ibid.*) In *People v. Bejasa*, *supra*, 205 Cal.App.4th at page 37, the court said, "A reasonable person in defendant's position would know that possession of methamphetamine . . . is a parole violation and a crime, and that arrest would likely follow." "[T]he fact that [police] advised defendant he was being 'detained for a possible parole violation' also weighs in favor of custody." (*Ibid.*)

The People claim *Miranda* does not apply because the question Wedemeyer asked Scott did not constitute an interrogation. We disagree. Under *Miranda*, an interrogation occurs where "the police should know" their questions are "likely to evoke an incriminating response." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301.) This is such a case. Here the police officer had possession of the evidence of a crime before he asked Scott the incriminating question while Scott was detained. At the pretrial hearing to exclude Scott's statements, Wedemeyer testified that he knew Scott was in possession of narcotics before he asked "what's in the bag?"

Because Wedemeyer knew what the bag contained, he consequently knew or should have known his question was likely to evoke an incriminating

4

response.  (*Rhode Island v. Innis*, *supra*, 446 U.S. at p. 301; *People v. Ceccone* (1968) 260 Cal.App.2d 886, 893-894 [in a roadside car search, police officer knew a bag contained marijuana, consequently asking the defendant what the bag contained without a prior *Miranda* warning required exclusion of defendant's answer]; see also *State v. O'Neal* (N.J. 2007) 921 A.2d 1079, 1082, 1088 [police who were searching defendant after seeing him use a sock in a street drug transaction could not ask him "what was in his sock" without first giving a *Miranda* advisement].)

In a case similar to this one, the Ninth Circuit in *United States v. Hernandez* (9th Cir. 2007) 476 F.3d 791, 796, said, "Officer Carlas testified that when he removed the opaque package from Hernandez's pants pocket he believed it contained drugs.  When officer Carlas then asked, 'what is this?', not only was this direct questioning, but *based on officer Carlas's belief that he was holding drugs in his hand, he knew or should have known his question could reasonably lead to an incriminating response from Hernandez.*"  (Italics added.)

The question Wedemeyer asked was not necessary to complete a parole search or for routine booking information.  A truthful answer to the question constituted an admission of the crime the police knew he had committed.  Consequently, Scott should have received a *Miranda* warning before he gave his incriminating response.  The trial court should have excluded his answer to the question.

But any error is harmless because even without his admission that the bag contained methamphetamine, there is overwhelming evidence of Scott's guilt.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)  The police found the narcotics on his person.  It was in the pocket of his pants.  Scott volunteered the admissible statement, "Now I'm really fucked," which showed his consciousness of guilt.  Wedemeyer testified he "had a pretty decent opinion it was methamphetamine" as he pulled the bag out.  He conducted a "NIK" test on the substance in the bag.  It "tested positive for methamphetamine."  Maria Perez, a sheriff's department forensic scientist,

testified the tested evidence sample "contained methamphetamine."  This evidence was uncontradicted.  Scott did not testify and he called no witnesses.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.


6

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Erika D. Jackson, Deputy Attorney General, for Plaintiff and Respondent.